**ALLEN & OVERY LLP**
Attorneys for the Petitioner
Ken Coleman
Stephen Doody
1221 Avenue of the Americas
New York, New York 10020
Telephone (212) 610-6300

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

--------------------------------------------------------- x
*In re:*                                                                                 :    Chapter 15
                                                                                              :
Petition of PRO Insurance Solutions Limited,                       :
as foreign representative of BALOISE                                    :
INSURANCE LTD., CITY                                                        :
INTERNATIONAL INSURANCE                                               :
COMPANY LIMITED, DOWA INSURANCE                           :    Case Nos. 10-_____ (___)
COMPANY (EUROPE) LIMITED, EAST                             :    through 10-_____ (___)
WEST INSURANCE COMPANY LIMITED,                        :
FUJI INTERNATIONAL INSURANCE                                  :
COMPANY LIMITED, HISCOX                                            :
INSURANCE COMPANY LIMITED, KX                               :
REINSURANCE COMPANY LIMITED,                                :
METROPOLITAN REINSURANCE                                      :    (Joint Administration Requested)
COMPANY (U.K.) LIMITED, MOORGATE                         :
INSURANCE COMPANY LIMITED,                                     :
NIPPON INSURANCE COMPANY OF                                 :
EUROPE LIMITED, POLYGON                                          :
INSURANCE COMPANY LIMITED, SWISS                        :
RE INTERNATIONAL SE, UK BRANCH,                           :
AND TOWER INSURANCE LIMITED                               :
                                                                                              :
Debtors in a Foreign Proceeding.                                       :
--------------------------------------------------------- x

## MEMORANDUM OF LAW IN SUPPORT OF PETITIONS UNDER CHAPTER 15 OF THE BANKRUPTCY CODE FOR RECOGNITION OF FOREIGN PROCEEDINGS, FOR A PERMANENT INJUNCTION, AND RELATED RELIEF

# TABLE OF CONTENTS

Page

FACTS .................................................................................................................................3

ARGUMENT ........................................................................................................................5

I.      THESE CASES ARE PROPER CASES UNDER CHAPTER 15 .....................................5

        A.      These Cases Concern Foreign Proceedings ............................................................6

        B.      The Cases Were Commenced by a Foreign Representative ...................................9

II.     THESE CHAPTER 15 CASES WERE PROPERLY COMMENCED............................9

III.    THE ENGLISH PROCEEDINGS SHOULD
        BE RECOGNIZED AS FOREIGN MAIN PROCEEDINGS  ..........................................10

IV.     ALTERNATIVELY, THE ENGLISH PROCEEDINGS WITH RESPECT
        TO PETITIONING COMPANIES NOT INCORPORATED IN ENGLAND SHOULD
        BE RECOGNIZED AS FOREIGN NONMAIN PROCEEDINGS...................................12

V.      THE RELIEF REQUESTED SHOULD BE GRANTED .................................................13

        A.      The Petitioner is Entitled to Relief under Section 1520
                with Respect to the Petitioning Companies ...........................................................17

        B.      The Relief Requested under Section 1521 Is Necessary and Appropriate ............18

VI.     THE PETITIONER HAS ALSO ESTABLISHED
        ITS ENTITLEMENT TO INJUNCTIVE RELIEF...........................................................23

        A.      The Petitioner Has Demonstrated its Success on the Merits ................................23

        B.      No Available Remedy at Law...............................................................................24

        C.      The Balance Of The Equities Tips Decidedly In Favor Of The Petitioner............25

CONCLUSION....................................................................................................................26

*Abel v. Shugrue (In re Ionosphere Clubs, Inc.)*,
 184 B.R. 648 (S.D.N.Y 1995) ................................................................................19

*Armco Inc. v. North Atlantic Ins. Co. (In re Bird)*,
 229 B.R. 90 (Bankr. S.D.N.Y. 1999) ......................................................................25

*Aviation & General Ins. Co. Ltd.*,
 No. 04-13499 (Bankr. S.D.N.Y. Aug. 5, 2004) ......................................................15

*Cornfeld v. Investors Overseas Services. Ltd.*,
 471 F. Supp. 1255 (S.D.N.Y.), *aff'd*, 614 F.2d 1286 (2d Cir. 1979) ......................14

*Cunard Steamship Co. Ltd. v. Salen Reefer Services A.B.*,
 773 F.2d 452 (2d Cir. 1985) ...................................................................................22

*Fidelity Mortgage Investors v. Camelia Builders, Inc.*,
 550 F.2d 47 (2d Cir. 1976), *cert. denied*, 429 U.S. 1093,
 *reh'g denied*, 430 U.S. 976 (1977) .........................................................................25

*In re Arion Ins. Co. Ltd.*,
 No. 07-12108 (Bankr. S.D.N.Y. Jan. 22, 2007) ..................................................8, 15

*In re AXA Ins. UK PLC, et al.*,
 No. 07-12110 (Bankr. S.D.N.Y. Aug. 15, 2007) .................................................8, 15

*In re Banco Nacional de Obras y Servicios Publicos, S.N.C.*,
 91 B.R. 661 (Bankr. S.D.N.Y. 1988) ......................................................................24

*In re Basis Yield Alpha Fund (Master)*,
 381 B.R. 37 (Bankr. S.D.N.Y. 2008) ......................................................................10

*In re Bd. of Dirs. of Hopewell Int'l Ins., Ltd.*,
 238 B.R. 25 (Bankr. S.D.N.Y. 1999),
 *aff'd* 275 B.R. 699 (S.D.N.Y. 2002) ...................................................................8, 15

*In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd.*,
 374 B.R. 122 (Bankr. S.D.N.Y. 2007) ....................................................................10

*In re Bird*,
222 B.R. 229 (Bankr. S.D.N.Y. 1998) ....................................................................................25

*In re Davis*,
191 B.R. 577 (Bankr. S.D.N.Y. 1996) ....................................................................................25

*In re Europäische Rückversicherungs-Gesellschaft in Zürich*,
No. 06-13061 (Bankr. S.D.N.Y. January 22, 2007) ...........................................................8, 15

*In re Gercke*,
122 B.R. 621 (Bankr. D.C. 1991) ....................................................................................24, 25

*In re Gold & Honey, Ltd.*,
410 B.R. 357, 373 (Bankr. E.D.N.Y. 2009) .......................................................................21, 22

*In re Gordian Runoff (UK) Ltd.*,
No. 06-11563 (Bankr. S.D.N.Y. Aug. 28, 2006) ...............................................................8, 15

*In re Greyfriars Insurance Co Ltd., et al.*,
Nos. 07-12934 to 07-12944 (Bankr. S.D.N.Y. October 23, 2007) ....................................8, 15

*In re Hatteras Reinsurance Ltd*,
No. 06-11304 (Bankr. S.D.N.Y. Sept. 25, 2006) ...................................................................11

*In re Ionosphere Clubs, Inc.*,
922 F.2d 984, 989 (2d Cir. 1990) .........................................................................................14

*In re Johns-Manville Corp.*,
517 F.3d 52, 65, 66 (2d Cir. 2008),
*rev'd* on other grounds, 129 U.S. 2195 (2009) ...................................................................20

*In re La Mutuelle du Mans Assurance IARD*,
No. 05-60100 (Bankr. S.D.N.Y. December 7, 2005) .........................................................8, 15

*In re Lines*,
81 B.R. 267, 270 (Bankr. S.D.N.Y. 1988) ..............................................................................24

*In re Lion-City Runoff Private Ltd.*,
No. 06-10461 (Bankr. S.D.N.Y. Apr. 13, 2006) ...............................................................8, 15

*In re Ludgate Ins. Co. Ltd.*,
No. 04-10590 (Bankr. S.D.N.Y. April 8, 2004) ......................................................................15

*In re Metcalfe & Mansfield Alternative Invs.*,
421 B.R. 685 (Bankr. S.D.N.Y. 2010) ...................................................................21

*In re Metromedia Fiber Network*,
416 F.3d 136, 141 (2d Cir. 2005)...........................................................................19

*In re Orion Insurance Company PLC, et al.*,
Nos. 94-B-44968 to 94-B-44969 (Bankr. S.D.N.Y. March 6, 1997).......................8

*In re Oslo Reinsurance Company (UK) Limited, et al.*,
No. 07-12211 (Bankr. S.D.N.Y. August 29, 2007) ................................................15

*In re Rubin*,
160 B.R. 269 (Bankr. S.D.N.Y. 1993).....................................................................25

*In re Qimonda AG Bankr. Litig.*,
2010 U.S. Dist. LEXIS 66926 (E.D. Va. July 2, 2010) ....................................21, 22

*In re SPhinX*,
351 B.R. 103, 120 n.22 (Bankr. S.D.N.Y. 2006)...............................................10, 17

*In re The Nichido Fire & Marine Ins. Co. Ltd.*,
No. 01-15987 (Bankr. S.D.N.Y. Feb. 13, 2002) ....................................................15

*In re Tradex Swiss*,
384 B.R. 34 (Bankr. D. Mass. 2008) .....................................................................11

*In re Tri-Continental Exch. Ltd.*,
349 B.R. 627, 634 (Bankr. E.D. Cal. 2006).............................................................11

*In re Unione Italiana (UK) Reinsurance Co. Ltd.*,
No. 04-17989 (Bankr. S.D.N.Y. June 8, 2005).......................................................15

*Lavie v. Ran*,
406 B.R. 277, 284 (Bankr. S.D.N.Y. 2009).............................................................12

*New York State Nat'l Org. for Women v. Terry*,
704 F. Supp. 1247, 1262 (S.D.N.Y.),
*aff'd as modified*, 886 F.2d 1339 (2d Cir. 1989),
*cert. denied*, 495 U.S. 947 (1990).........................................................................23

*Teachers Ins. & Annuity Assoc. v. Butler*,
803 F.2d 61, 65 (2d Cir. 1986)...............................................................................20

iv

*Travellers Int'l AG v. Trans World Airlines, Inc.*,
    722 F. Supp. 1087, 1096 (S.D.N.Y. 1989),
    *aff'd*, 41 F.3d 1570 (2d Cir. 1994) ...............................................................................23, 24

*Victrix S.S. Co., S.A. v. Salen Dry Cargo A.B.* ,
    825 F.2d 709 (2d Cir. 1987).........................................................................................24

## STATUTES

11 U.S.C. § 101 ..........................................................................................................6, 9

11 U.S.C. § 304 ........................................................................................................6, 15

11 U.S.C. § 1501 ......................................................................................................5, 16

11 U.S.C. § 1502 ..........................................................................................................12

11 U.S.C. § 1504 ........................................................................................................2, 9

11 U.S.C. § 1506 ....................................................................................................14, 21

11 U.S.C. § 1509 ............................................................................................................9

11 U.S.C. § 1515 ................................................................................................. passim

11 U.S.C. § 1516 ..........................................................................................................10

11 U.S.C. § 1517 ................................................................................................. passim

11 U.S.C. § 1520 ....................................................................................................17, 18

11 U.S.C. § 1521 ................................................................................................. passim

11 U.S.C. § 1522 ..........................................................................................................19

H.R. Rep. No. 109-31 ...............................................................................................6, 14

xxvi

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
-------------------------------------------------------- x
```
*In re:*                                                  :   Chapter 15
                                                          :
Petition of PRO Insurance Solutions Limited,              :
as foreign representative of BALOISE                      :
INSURANCE LTD., CITY                                      :
INTERNATIONAL INSURANCE                                   :
COMPANY LIMITED, DOWA INSURANCE                           :   Case Nos. 10-_____ (___)
COMPANY (EUROPE) LIMITED, EAST                            :   through 10-_____ (___)
WEST INSURANCE COMPANY LIMITED,                           :
FUJI INTERNATIONAL INSURANCE                              :
COMPANY LIMITED, HISCOX                                   :
INSURANCE COMPANY LIMITED, KX                             :
REINSURANCE COMPANY LIMITED,                              :
METROPOLITAN REINSURANCE                                  :   (Joint Administration Requested)
COMPANY (U.K.) LIMITED, MOORGATE                          :
INSURANCE COMPANY LIMITED,                                :
NIPPON INSURANCE COMPANY OF                               :
EUROPE LIMITED, POLYGON                                   :
INSURANCE COMPANY LIMITED, SWISS                          :
RE INTERNATIONAL SE, UK BRANCH,                           :
AND TOWER INSURANCE LIMITED                               :
                                                          :
Debtors in a Foreign Proceeding.                          :
```
-------------------------------------------------------- x
```

**MEMORANDUM OF LAW IN SUPPORT OF PETITIONS**
**UNDER CHAPTER 15 OF THE BANKRUPTCY CODE FOR**
**RECOGNITION OF FOREIGN PROCEEDINGS,**
**FOR A PERMANENT INJUNCTION, AND RELATED RELIEF**

PRO Insurance Solutions Limited (the "**Petitioner**") is the designated foreign

representative of Baloise Insurance Ltd. ("**Baloise**"), City International Insurance Company

Limited ("**City International**"), Dowa Insurance Company (Europe) Limited ("**Dowa**"), East

West Insurance Company Limited ("**East West**"), Fuji International Insurance Company Limited

("**Fuji**"), Hiscox Insurance Company Limited ("**Hiscox**"), KX Reinsurance Company Limited

("**KX**"), Metropolitan Reinsurance Company (U.K.) Limited ("**Met Re**"), Moorgate Insurance Company Limited ("**Moorgate**"), Nippon Insurance Company of Europe Limited ("**Nippon**"), Polygon Insurance Company Limited ("**Polygon**"), Swiss Re International SE, UK Branch ("**SRI**"), and Tower Insurance Limited ("**Tower**") (together, the "**Petitioning Companies**") in schemes of arrangement (the "**Schemes**") and associated proceedings under part 26 of the English Companies Act 2006 (the "**English Proceedings**") pending before the High Court of Justice of England and Wales (the "**High Court**").[1]

The Petitioner has commenced these chapter 15 cases ancillary to the English Proceedings and respectfully files Verified Petitions for Recognition on behalf of the Petitioning Companies (the "**Chapter 15 Petitions**") with the accompanying documentation required by sections 1504 and 1515 of title 11 of the United States Code (the "**Bankruptcy Code**").  In so doing, the Petitioner seeks entry of an order (the "**Proposed Order**") (i) recognizing the English Proceedings as "foreign main proceedings" or, in the alternative, as "foreign nonmain proceedings" and (ii) granting a permanent injunction and related relief in order to make the Schemes effective and enforceable in the United States.

The Petitioner respectfully submits this Memorandum of Law in support of the Chapter 15 Petitions.

---

[1] All capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Schemes and accompanying Explanatory Statement (together, the "**Scheme Document**"), copies of which are annexed as Exhibit A to the Declaration of Ken Coleman filed contemporaneously herewith (the "**Coleman Declaration**").

## FACTS

The Court is respectfully referred to the Chapter 15 Petitions for a fuller description of the business of the Petitioning Companies, the English Proceedings, and the events leading up to the filing of the Chapter 15 Petitions.

The Petitioning Companies, along with The Home Insurance Company (In Liquidation) ("**Home**"), The Insurance Corporation of Singapore (UK) Limited ("**ICS**"), and English & American Insurance Company Limited ("**English American**," and with Home, ICS, and the Petitioning Companies, the "**Scheme Companies**"), are all insurance companies that formerly underwrote insurance and reinsurance business in one or more pooling arrangements (the "**Pools**").[2]  Of these, the three pools that are the principal subject of the Schemes were underwritten and managed by English & American Underwriting Agency Limited ("**EAUA**") in London (the "**EAUA Pools**").  The Schemes also address liabilities arising under three significantly smaller pools.[3]  The Pools underwrote risks until the end of 1992, when they ceased accepting new business and went into run-off.  In 1993, the Petitioner, a run-off specialist, assumed the administration of the Pools.

When insurance companies or insurance pools enter into run-off, they cease writing new business and seek to determine, settle and pay all liquidated claims of their insureds either as they arise, or, if possible, before they arise.  The Pools have been in run-off for approximately sixteen years, and the Petitioner estimates that in the ordinary course the run-off would take at

---

[2]    An "insurance pool" refers to a syndicate or association of insurance or reinsurance companies organized to underwrite particular risks.  Each member of the pool shares in premiums, losses and expenses according to a predetermined agreement.

[3]    The TAUS Pool underwrote aviation business in Guernsey from 1990 to 1992.  The Transglobe Re Pool underwrote aviation insurance from 1982 to 1983.  The E&A Re Pool underwrote facultative reinsurance, primarily through London market brokers, from 1981 to 1984.

least another sixteen years to complete. In order to shorten the time period for the run-off, reduce administrative costs, and terminate the business of the Pools (the "**Pools Business**") in a unified and coordinated manner, the Scheme Companies have each proposed a "closing" scheme of arrangement under the Companies Act. Each Scheme Company has a separate Scheme, though all are set out in a single document. Other than English American, Home, and ICS, all of the Scheme Companies are solvent, and accordingly the Petitioning Companies anticipate that all claims addressed by the Schemes of the Petitioning Companies will be paid in full in an estimated amount, subject to a time-value discount, in accordance with the Schemes.

By orders dated November 30, 2009 (the "**Convening Orders**"), copies of which are annexed as Exhibit B to the Coleman Declaration, the High Court granted leave to the Scheme Companies to convene meetings of Scheme Creditors for the purpose of considering and, if thought fit, approving, the Schemes (the "**Meetings**"). Pursuant to the Convening Orders, the High Court declared, affirmed, and certified that the Petitioner is the foreign representative with respect to the Petitioning Companies' Schemes for the purpose of filing petitions for recognition and additional relief under chapter 15 of the Bankruptcy Code.

In accordance with the Convening Orders, Meetings for each of the Petitioning Companies were held on April 30, 2010. During the Meetings, the requisite majorities of each class of Scheme Creditors of each of the Petitioning Companies voted in favor of the Schemes. The High Court sanctioned the Petitioning Companies' Schemes by orders dated October 6, 2010 (the "**Sanction Orders**"), copies of which are annexed as Exhibit C to the Coleman Declaration. The Petitioning Companies' Schemes became effective upon the delivery of the Sanction Orders to the Registrar of Companies in England and Wales on October 12, 2010. By the Chapter 15 Petitions, the Petitioner, as foreign representative of the Petitioning Companies, seeks, pursuant

to chapter 15 of the Bankruptcy Code, entry of an order substantially in the form of the Proposed Order granting (i) recognition of the English Proceedings and (ii) a permanent injunction and related relief, including, among other things, giving full force and effect in the United States to the Petitioning Companies' Schemes.

## ARGUMENT

## I

## THESE CASES ARE PROPER CASES UNDER CHAPTER 15

Chapter 15 of the Bankruptcy Code applies where assistance is sought in the United States by a foreign representative in connection with a foreign proceeding. *See* 11 U.S.C. § 1501(b)(l). Specifically, chapter 15, among other things, authorizes this Court to (i) recognize a foreign proceeding upon a foreign representative's proper commencement of a case under chapter 15 and (ii) grant assistance in the United States to such foreign representative with respect to the foreign proceeding, including by granting appropriate relief pursuant to section 1521 of the Bankruptcy Code. These chapter 15 cases have been commenced for the purpose of obtaining the assistance of this Court to ensure the effective and economical administration of the Petitioning Companies' Schemes by, among other things, restricting the Petitioning Companies' Scheme Creditors from taking certain actions in the United States that would undermine the unified, collective run-off process in England.

The Chapter 15 Petitions satisfy all of the requirements set forth in section 1515 of the Bankruptcy Code. Moreover, given that the relief requested is necessary to give effect to the Petitioning Companies' Schemes in the United States, granting recognition to the Petitioning Companies' Schemes and the relief requested is consistent with the goals of international cooperation and comity embodied in chapter 15 of the Bankruptcy Code. The relief requested is

further consistent with the relief afforded by the Court in other ancillary proceedings involving foreign insurance companies, both under former section 304 and now under chapter 15 of the Bankruptcy Code.[4]

## A.     These Cases Concern Foreign Proceedings

Section 10l(23) of the Bankruptcy Code defines a "foreign proceeding" as:

> a collective judicial or administrative proceeding in a foreign country, including an interim proceeding, under a law relating to insolvency or adjustment of debt in which proceeding the assets and affairs of the debtor are subject to control or supervision by a foreign court, for the purpose of reorganization or liquidation.

11 U.S.C. § 101(23). Much like the definition of foreign proceeding used under section 304, the definition of a foreign proceeding for purposes of chapter 15 is very broad and is specifically not limited to proceedings under a bankruptcy or insolvency statute, but also includes "debt adjustment" proceedings. *Id.*; *see* H. REP. NO. 109-31, pt. 1 (2005) (noting addition of "or debt adjustment" to definition "emphasizes that the scope of . . . chapter 15 is not limited to proceedings involving only debtors which are technically insolvent").

Here, the Petitioning Companies proposed their Schemes to accelerate the run-off of their Pools Business and make payment to Scheme Creditors on account of their Scheme Claims in a unified manner. As described in the Chapter 15 Petitions, the relationship among the Scheme Companies is complex and interwoven. The Pools Business of the Scheme Companies is intertwined, given the obligations to pay claims under the policies and the fronting and reinsurance arrangements between the Scheme Companies and the reinsurers of the Pools. Accordingly, the run-off of the Pools Business has to date been conducted on a unified basis.

---

[4]     Section 304 of the Bankruptcy Code was repealed as of the effective date of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, October 17, 2005, and replaced by chapter 15 of the Bankruptcy Code.

With English American now wishing to close its run-off, the Petitioning Companies have concluded that it would be appropriate and administratively beneficial to the Petitioning Companies and their Scheme Creditors to promote their own Schemes with respect to their Pools Business at the same time as English American so as to bring finality to the Pools and terminate the Pools Business in a unified and coordinated manner.[5]

The Petitioning Companies' Schemes, and the proceedings respecting them under the Companies Act before the High Court, constitute foreign proceedings in that they are each (i) a collective judicial proceeding in a foreign country, (ii) in which the proposal for dealing with the assets and affairs of the debtor are subject to review, approval and supervision by a foreign court, (iii) for the purpose of reorganization or liquidation.

As more fully described in the Chapter 15 Petitions, the English Proceedings satisfy all of the elements of foreign proceedings under the Bankruptcy Code. First, the English Proceedings are collective judicial proceedings in England. Indeed, Scheme Creditors could not vote on the Petitioning Companies' Schemes absent leave from the High Court. Moreover, the Petitioning Companies' Schemes only became effective and subject to implementation following a second hearing before the High Court to consider sanction of the Schemes and upon the delivery of the resultant Sanction Orders to the Registrar of Companies in England and Wales. Second, pursuant to the Schemes, the High Court has exclusive jurisdiction to hear and determine any suit, action, claim, or proceeding and to settle any dispute which may arise out of any action taken or omitted to be taken under the Schemes or in connection with the

---

[5] If the run-off of the Pools is further fragmented, Scheme Creditors, policyholders, reinsurers, the Petitioning Companies, English American, Home, and ICS would suffer harms occasioned by such fragmentation, including duplication (if not, multiplication) of effort and increased costs. If, on the other hand, the Pools and their run-off remain unified, claims handling and reinsurance collection will remain cohesive and costs will be minimized and shared between the Scheme Companies whose Schemes ultimately become effective.

administration of the Schemes. Third, the English Proceedings are for the purpose of "reorganization" in that they provide for the expeditious, economical and equitable determination, adjustment, liquidation and satisfaction of Scheme Claims against the Petitioning Companies. Furthermore, the Petitioning Companies' Schemes were duly proposed pursuant to part 26 of the Companies Act 2006, a law relating to insolvency or adjustment of debt. Thus, under the plain meaning of section 101(23) of the Bankruptcy Code, the English Proceedings are foreign proceedings.

The Court has on many occasions recognized solvent schemes of arrangement that have been sanctioned in England and their associated proceedings as "foreign proceedings" under the Bankruptcy Code. *See*, *e.g.*, *In re Greyfriars Insurance Co Ltd., et al.*, Case Nos. 07-12934 to 07-12944 (Bankr. S.D.N.Y. October 23, 2007) (granting chapter 15 relief to solvent schemes of arrangement by members of a reinsurance pool for common pool business); *In re AXA Ins. UK PLC, et al.*, Case Nos. 07-12110 to 07-12113 (Bankr. S.D.N.Y. August 15, 2007) (same); *In re Arion Ins. Co. Ltd.*, Case No. 07-12108 (Bankr. S.D.N.Y. August 9, 2007) (granting chapter 15 relief to a solvent scheme of arrangement); *In re Europäische Rückversicherungs-Gesellschaft in Zürich*, Case No. 06-13061 (Bankr. S.D.N.Y. January 22, 2007) (same); *In re Gordian Runoff (UK) Ltd.*, Case No. 06-11563 (Bankr. S.D.N.Y. August 28, 2006) (same); *In re Lion City Run-off Private Ltd.*, Case No. 06-10461 (Bankr. S.D.N.Y. April 13, 2006) (same); *In re La Mutuelle du Mans Assurance IARD*, Case No. 05-60100 (Bankr. S.D.N.Y. December 7, 2005) (same); *In re Board of Dirs. of Hopewell Int'l Ins. Ltd.*, 238 B.R. 25 (Bankr. S.D.N.Y. 1999) (granting section 304 relief to a solvent scheme of arrangement), *aff'd*, 275 B.R. 699 (S.D.N.Y. 2002); *In re Orion Insurance Company PLC, et al.*, Case Nos. 94-B-

44968 to 94-B-44969 (Bankr. S.D.N.Y. March 6, 1997).  Accordingly, the English Proceedings

are precisely the sort of proceedings that chapter 15 was meant to assist.

**B.      The Cases Were Commenced by a Foreign Representative**

These chapter 15 cases were commenced by the duly appointed and authorized

"foreign representative" of the Petitioning Companies within the meaning of section 101(24) of

the Bankruptcy Code.  That section provides as follows:

> The term "foreign representative" means a person or body,
> including a person or body appointed on an interim basis,
> authorized in a foreign proceeding to administer the reorganization
> or the liquidation of the debtor's assets or affairs or to act as a
> representative of such foreign proceeding.

11 U.S.C. § 101(24).  In this instance, the Petitioner is a run-off specialist that has administered

the run-off of the Pools since 1993. The Convening Orders issued by the High Court, pursuant to

which the Petitioner was appointed as the foreign representative of the Petitioning Companies,

provides that the Petitioner "be appointed to act as foreign representative of the [Petitioning

Companies] in any proceedings pursuant to Chapter 15 of the US Bankruptcy Code."  From the

face of the evidence submitted on behalf of the Petitioner, the Petitioner is duly authorized to act

as the foreign representative, as defined under section 101(24), in these chapter 15 cases.  The

Petitioner, as the foreign representative of the Petitioning Companies, is therefore entitled to

commence these ancillary cases under chapter 15 of the Bankruptcy Code.

## II

### THESE CHAPTER 15 CASES WERE PROPERLY COMMENCED

These chapter 15 cases were duly and properly commenced as required by

sections 1504 and 1509 of the Bankruptcy Code by the filing of petitions for recognition of

foreign proceedings under section 1515(a) of the Bankruptcy Code, accompanied by all

documents and information required by section 1515(b) and (c).  *See In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd.*, 374 B.R. 122, 127 (Bankr. S.D.N.Y. 2007) ("A case under chapter 15 is commenced by a foreign representative filing a petition for recognition of a foreign proceeding under section 1515 of the Bankruptcy Code.").  Because the Chapter 15 Petitions satisfy the requirements set forth in section 1515 of the Bankruptcy Code, these chapter 15 cases have been properly commenced by the Petitioner.

## III

### THE ENGLISH PROCEEDINGS SHOULD<br>BE RECOGNIZED AS FOREIGN MAIN PROCEEDINGS

This Court should recognize the English Proceedings as "foreign main proceedings," as defined in section 1502(4) of the Bankruptcy Code.  The Bankruptcy Code provides that a foreign proceeding for which recognition is sought must be recognized as a "foreign main proceeding" if it is pending in the country where the debtor has the center of its main interests.  *See* 11 U.S.C. § 1517(b)(l).  Chapter 15 requires that a court make this determination at the time the petition for recognition is filed, rather than retrospectively. *In re SphinX*, 351 B.R. 103, 120 n.22 (Bankr. S.D.N.Y. 2006). However, in the absence of evidence to the contrary, the debtor's registered office is presumed to be the center of the debtor's main interests.  *See* 11 U.S.C. § 1516(c); *In re Basis Yield Alpha Fund (Master)*, 381 B.R. 37, 48 (Bankr. S.D.N.Y. 2008).

Certain of the Petitioning Companies' registered offices are located in England and, in accordance with section 1517(b), in the absence of evidence to the contrary, England should be found to be the center of main interests with respect to these companies. *Id*. Further, in this instance, the facts do not rebut the presumption, but rather support a finding that all of the Petitioning Companies' center of main interests are in England.

Courts equate a debtor's center of main interests with its principal place of business, examining factors such as the location of the debtor's headquarters, management, assets, and creditors, and the jurisdiction of controlling law. *In re Tradex Swiss*, 384 B.R. 34 (Bankr. D. Mass. 2008). *See also In re Hatteras Reinsurance Ltd,* No. 06-11304 (Bankr. S.D.N.Y. Sept. 25, 2006) (granting foreign main recognition of an insurance company registered in Bermuda with its principal assets located in New York); *In re Tri-Continental Exch. Ltd*., 349 B.R. 627, 634 (Bankr. E.D. Cal. 2006). With respect to the English Proceedings and the Schemes, each of the Petitioning Companies, including those not incorporated in England, has a principal place of business in England. Under English law, schemes of arrangement may be limited to those liabilities associated with a select portion of a company's book of business and otherwise leave such company's balance sheet unaffected. This is the case here; with the exception of City International, which is at any rate incorporated in England, the Schemes deal primarily with those portions of the Petitioning Companies' businesses that relate to the Pools. These predominantly consist of business written through the EAUA Pools, which were underwritten at all times through EAUA, and administered at different times by EAUA and the Petitioner, in England. The other Pools that are the subject of the Schemes, which are significantly smaller than the EAUA Pools, have likewise been administered by the Petitioner in England for approximately sixteen years. Upon the effectiveness of the Schemes, the Petitioner will serve as Scheme Manager and continue to conduct the Petitioning Companies' business and affairs in England. As such, England is "ascertainable by third parties" as the Petitioning Companies' center of main interests with respect to the Pools, which due to the nature of schemes of arrangement are the subject of these Chapter 15 Petitions. *See In re Bear Stearns*, 374 B.R. at 127 (noting that debtors' center of main interests is the United States where the debtors "conduct

the administration of their interests on a regular basis and is therefore ascertainable by third parties").  Accordingly, given that the Schemes were approved by the High Court and are to be implemented in England, and because England is the center of the Petitioning Companies' main interests with respect to all liabilities and assets subject to the Schemes, the English Proceedings should be recognized as foreign main proceedings with respect to all of the Petitioning Companies.

IV

**ALTERNATIVELY, THE ENGLISH PROCEEDINGS
WITH RESPECT TO PETITIONING COMPANIES
NOT INCORPORATED IN ENGLAND SHOULD BE
<u>RECOGNIZED AS FOREIGN NONMAIN PROCEEDINGS</u>**

Alternatively, if the Court declines to recognize any of the English Proceedings as "foreign main proceedings," such English Proceedings should be recognized as a "foreign nonmain proceeding" as defined in section 1502(5) of the Bankruptcy Code.    Under section 1517(b) of the Bankruptcy Code, a foreign proceeding shall be recognized as a foreign nonmain proceeding if it is pending in a country where the debtor has an establishment. 11 U.S.C. § 1517(b)(2).  Section 1502 of the Bankruptcy Code defines an "establishment" as "any place of operations where the debtor carries out a nontransitory economic activity."  *See* 11 U.S.C. § 1502(2).  The "establishment" requirement is satisfied by the local conduct of business. *See In re Bear Stearns,* 374 B.R. at 131. As with the center of main interests determination, the establishment analysis examines the facts in existence at the time the petition for recognition is filed. *See Lavie v. Ran*, 406 B.R. 277, 284 (Bankr. S.D.N.Y. 2009).

Each of the Petitioning Companies is permitted to write, and indeed has written, insurance business in England.  Moreover, as noted above, all of the Petitioning Companies' business with respect to the EAUA Pools was underwritten through the EAUA Pools in England

and administered at different times by EAUA and the Petitioner in England, while the remaining Pools Business that is the subject of the Schemes has similarly been administered by the Petitioner in England for sixteen years. The Petitioner will continue to administer the Pools once the Schemes become effective. Accordingly, each of the Petitioning Companies conducts pertinent nontransitory economic activity in England and therefore has an establishment in the foreign country in which the foreign proceeding is located in accordance with section 1502(2). Even if the court does not recognize any of the English Proceedings as "foreign main proceedings," they should nevertheless be recognized as "foreign nonmain proceedings" pursuant to section 1517(b)(2) of the Bankruptcy Code.

## V

## <u>THE RELIEF REQUESTED SHOULD BE GRANTED</u>

An order recognizing a foreign proceeding shall be entered if all of the requirements for recognition have been met. 11 U.S.C. § 1517. As set forth above, the Petitioning Companies' proceedings relating to the Schemes constitute foreign proceedings within the meaning of section 1502 of the Bankruptcy Code. The Petitioner qualifies as a foreign representative. Furthermore, the Chapter 15 Petitions satisfy the requirements of section 1515 of the Bankruptcy Code. Therefore, pursuant to section 1517(a) and 1517(b) of the Bankruptcy Code, the Court should enter an order recognizing the foreign proceedings. The legislative history to Chapter 15 provides that:

> The decision to grant recognition is not dependent upon any findings about the nature of the foreign proceedings of the sort previously mandated by section 304(c) of the Bankruptcy Code. The requirements of [section 1517], which incorporates the definitions in section 1502 and sections 101(23) and (24), are all that must be fulfilled to attain recognition.

H.R. REP. 109-31, pt. 1 (2005). Thus, recognition under sections 1517(a) and (b) of the Bankruptcy Code is mandatory where, as here, a chapter 15 petition meets the statutory requirements.

Moreover, the recognition of the Petitioning Companies' English Proceedings as foreign proceedings would not be inconsistent with section 1506 of the Bankruptcy Code. That section provides that nothing in chapter 15 shall prevent the Court from refusing to take an action otherwise required by chapter 15 if such action would be manifestly contrary to the public policy of the United States.[6] 11 U.S.C. § 1506. As discussed below, the relief requested by the Petitioner is not manifestly contrary to, but rather consistent with, the public policy of the United States.

It is well established that one of the fundamental goals of the Bankruptcy Code is the centralization of disputes involving the debtor. *See, e.g.*, *In re Ionosphere Clubs, Inc.*, 922 F.2d 984, 989 (2d Cir. 1990) ("The Bankruptcy Code 'provides for centralized jurisdiction and administration of the debtor, its estate and its reorganization in the Bankruptcy Court . . .'"). Indeed, as one court has noted, "the firm policy of American courts is the staying of actions against a corporation which is the subject of a bankruptcy proceeding in another jurisdiction." *Cornfeld v. Investors Overseas Servs., Ltd.*, 471 F. Supp. 1255, 1259 (S.D.N.Y. 1979)

---

[6] As the legislative history explains, "[section 1506] follows the Model Law article 5 exactly, [which] is standard in UNCITRAL texts, and has been narrowly interpreted on a consistent basis in courts around the world. The word 'manifestly' in international usage restricts the public policy exception to the most fundamental policies of the United States." H.R. REP. 109-31 pt. 1 (2005).

(recognizing that Canadian liquidation proceeding would not violate laws or public policy of New York or the United States). The English Proceedings and the Schemes are similar to bankruptcy or liquidation proceedings in that they provide for a centralized process to (i) assert and resolve claims against an estate and (ii) make distributions to creditors. Recognizing the Petitioning Companies' Schemes, enjoining certain actions in accordance with such Schemes and granting the relief requested would ensure the unified run-off of the Pools and the implementation and further administration of the Petitioning Companies' Schemes. These consequences are demonstrably consistent with the public policy of the United States.

Indeed, the relief requested is similar if not virtually identical to the relief granted in other ancillary cases under former section 304 and under chapter 15 of the Bankruptcy Code. Under former section 304, courts in this District granted recognition to other solvent schemes of arrangement of insurance companies and thereby made them binding on and enforceable against creditors in the United States.[7] Under chapter 15 of the Bankruptcy Code, courts in this District have continued to grant recognition to solvent schemes of arrangement of insurance companies.[8]

---

[7]    *See, e.g., In re Bd. of Dirs. of Hopewell Int'l Ins. Ltd.*, 238 B.R. 25 (Bankr. S.D.N.Y. 1999), *aff'd*, 275 B.R. 699 (S.D.N.Y. 2002); *In re Unione Italiana (UK) Reinsurance Co. Ltd.,* Case No. 04-17989 (Bankr. S.D.N.Y. June 8, 2005); *Aviation & General Ins. Co. Ltd.*, Case No. 04-13499 (Bankr. S.D.N.Y. Aug. 5, 2004); *In re Ludgate Ins. Co. Ltd.,* Case No. 04-10590 (Bankr. S.D.N.Y. April 8, 2004); *In re The Nichido Fire & Marine Ins. Co. Ltd.*, Case No. 01-15987 (Bankr. S.D.N.Y. Feb. 13, 2002).

[8]    *See*, *e.g.*, *In re Greyfriars*, *et al.*, Case Nos. 07-12934 to 07-12944 (Bankr. S.D.N.Y. October 23, 2007), *In re Oslo Reinsurance Company (UK) Limited*, *et al.*, Case No. 07-12211 (Bankr. S.D.N.Y. August 29, 2007); *In re Axa Ins. UK PLC*, *et al.*, Case Nos. 07-12110 to 07-12113 (Bankr. S.D.N.Y. August 15, 2007; *In re Axion Ins. Co. Ltd.*, Case No. 07-12108 (Bankr. S.D.N.Y. August 9, 2007); *In re Europäische Rückversicherungs-Gesellschaft in Zürich*, Case No. 06-13061 (Bankr. S.D.N.Y. January 22, 2007; *In re Gordion Runoff (UK) Ltd.*, Case No. 06-11563 (Bankr. S.D.N.Y. August 29, 2006); *In re Lion City Run-off Private Ltd.*, Case No. 06-10461 (Bankr. S.D.N.Y. April 13, 2006); *In re La Mutuelle du Mans, Assurance IARD*, Case. No. 05-60100 (Bankr. S.D.N.Y. Dec. 7, 2005).

Further, recognition of the English Proceedings would be consistent with the purpose of chapter 15 and its predicate, the UNCITRAL Model Law on Cross-Border Insolvency. Section 1501 of the Bankruptcy Code provides, in pertinent part that:

> The purpose of this chapter is to incorporate the Model Law on Cross-Border Insolvency so as to provide effective mechanisms for dealing with cases of cross-border insolvency with the objectives of -
>
> (1)    cooperation between -
>
>                 \* \* \*
>
> (B)    the courts and other competent authorities of foreign countries involved in cross-border insolvency cases;
>
>                 \* \* \*
>
> (3)    fair and efficient administration of cross-border insolvencies that protects the interests of all creditors, and other interested entities, including the debtor;
>
> (4)    protection and maximization of the value of the debtor's assets.

11 U.S.C. § 1501.

The relief requested by the Petitioner is consistent with, and critical to effectuate, the objectives of chapter 15 for several reasons. First, recognition of the English Proceedings would foster cooperation between the High Court and the courts of the United States. By granting recognition of the English Proceedings and injunctive relief, this Court would be cooperating with and assisting the High Court in the implementation of the Schemes and the Sanction Orders. Scheme Creditors would generally be enjoined by this Court from commencing or continuing actions against the Scheme Companies, thereby promoting the enforcement of the Schemes sanctioned by the High Court.

Second, recognition of the English Proceedings would promote the fair and efficient administration of a cross-border debt-adjustment procedure that protects the interests of all

creditors and interested entities. By recognizing the English Proceedings, the process of resolving Scheme Claims would be centralized in England. Scheme Creditors would be required to assert their Scheme Claims in accordance with the terms of the Schemes and any disputes would be subject to the uniform jurisdiction of a single tribunal, the High Court, as intended by the Petitioning Companies' Schemes and in a manner that harmonizes the interests of the Petitioning Companies' Scheme Creditors. If the Petitioning Companies' Scheme Creditors are not effectively stayed, the uniform and orderly determination and settlement of Scheme Claims may be jeopardized.

Finally, the relief requested would protect the Petitioning Companies' assets. Absent such relief, the Petitioning Companies' assets may be depleted and available resources may be expended unnecessarily to defend collection and other actions brought in the United States in contravention of the Petitioning Companies' Schemes and the Sanction Orders. Accordingly, the relief requested would further the objectives of chapter 15 by assisting the implementation of the Petitioning Companies' Schemes.

**A.      The Petitioner is Entitled to Relief under Section 1520
          with Respect to the Petitioning Companies**

Upon recognition of the English Proceedings of the Petitioning Companies as foreign main proceedings, certain express relief is automatically granted as a matter of right. 11 U.S.C. § 1520. In particular, upon the Court's recognition of the English Proceedings as foreign main proceedings, section 1520(a)(l) requires that the automatic stay provisions of section 362 of the Bankruptcy Code apply to protect the Petitioning Companies from any claim or act to take possession of their property. While such relief is not automatic upon recognition as a foreign nonmain proceeding, it may nevertheless be granted by the Court. *See In re SPhinx*, 351 B.R. at

115-16 (noting that chapter 15 "gives the bankruptcy court the ability to grant substantially the same types of relief in assistance of foreign nonmain proceedings as main proceedings").

Accordingly, to the extent that any of the English Proceedings are not recognized as "foreign main proceedings," the Petitioner, as the foreign representative of the Petitioning Companies, requests that the relief afforded foreign main proceedings pursuant to section 1520 of the Bankruptcy Code be extended to such proceedings as additional relief authorized by section 1521 of the Bankruptcy Code. The Petitioner is requesting the relief afforded under section 1520 only to the extent such relief is consistent with the terms of the Petitioning Companies' Schemes, which bar any actions against the Petitioning Companies or their property to enforce Scheme Claims against the Petitioning Companies. Accordingly, the Proposed Order provides that sections 361 and 362 of the Bankruptcy Code only apply "with respect to the Petitioning Companies and property of the Petitioning Companies that is within the territorial jurisdiction of the United States in relation to Scheme Claims."

## B.  The Relief Requested under Section 1521 Is Necessary and Appropriate

In addition to the relief provided by section 1520 of the Bankruptcy Code, the Petitioner, as the foreign representative of the Petitioning Companies, requests relief under section 1521 of the Bankruptcy Code to assist in the effective implementation of the Schemes. Upon recognition of a foreign proceeding, at the request of the foreign representative, the Court may grant, with certain express exceptions, "any appropriate relief," including "any additional relief that may be available to a trustee" and injunctive relief provided that the Court determines that doing so is necessary to effectuate the purpose of Chapter 15 and to protect the assets of the debtor or the interests of the creditors.  11 U.S.C. § 1521(a).  Indeed, the Court may grant such

relief only if the interests of creditors and other interested entities, including the debtor, are sufficiently protected. *See* 11 U.S.C. § 1522.

The additional relief requested by the Petitioner includes injunctive relief as well as recognition of the Petitioning Companies' Schemes in the United States. To ensure the continued unified winding up of the Pools Business, the Schemes provide that where a Scheme Creditor is a Scheme Creditor of more than one Scheme Company, it must abide by the terms of the other Schemes that have been sanctioned by the High Court and have become effective.[9] Accordingly, a Scheme Creditor that, by virtue of the relief granted under chapter 15 of the Bankruptcy Code, becomes bound by a Petitioning Company's Scheme, must also abide by the terms of the sanctioned and effective Schemes of the other Scheme Companies.

Given that the Schemes contain long-term stay provisions enjoining Scheme Creditors from taking certain actions against the Scheme Companies, binding the Petitioning Companies' Scheme Creditors to the Schemes of the other Scheme Companies is akin to a third-party, non-debtor injunction issued in plenary cases under the Bankruptcy Code. Courts have considered this issue in a number of cases. *See, e.g., In re Metromedia Fiber Network*, 416 F.3d 136, 141 (2d Cir. 2005) (noting "a court may enjoin a creditor from suing a third party, provided the injunction plays an important part in the debtor's reorganization plan"); *Abel v. Shugrue (In re Ionosphere Clubs, Inc.)*, 184 B.R. 48 (S.D.N.Y. 1995) ("Courts consistently have recognized that bankruptcy courts may issue injunctions enjoining creditors from suing third parties including officers and directors of the debtor in order to resolve finally all claims in connection

---

[9]   In particular, clause 2.8.4 of the Schemes provides, in pertinent part, that "[i]t is a requirement of the Scheme between each Scheme Company and its Scheme Creditors that such creditors shall, insofar as they are Scheme Creditors of any other Scheme Company, abide and be bound by the terms of the Scheme as it relates to that other Scheme Company."

with the estate and to give finality to a reorganization."); *Teachers Ins. & Annuity Assoc. v. Butler*, 803 F.2d 61, 65 (2d Cir. 1986) ("Several courts have held that under specific circumstances non-debtors may be protected  [by injunction]. . . if [the injunction] contributes to the debtor's efforts to achieve rehabilitation.").  Generally, courts in the Second Circuit have concluded that injunctions protecting nondebtors may be issued in plenary cases in "circumstances that may be characterized as unique."  *Metromedia*, 416 F.3d at 142.  Such circumstances are present where the enjoined actions are "against an asset of the bankruptcy estate," or where the enjoined actions "directly affect the *res* of the bankruptcy estate."[10]  *In re Johns-Manville Corp.*, 517 F.3d 52, 65, 66 (2d Cir. 2008), *rev'd* on other grounds, 129 U.S. 2195 (2009).

If Scheme Creditors of the Petitioning Companies could challenge or act in contravention of the Schemes of the other Scheme Companies, the unified winding up of the Pool Business would be impaired.  Due to the complex insurance and reinsurance arrangements of the Scheme Companies, the various obligations of the Scheme Companies to creditors are intricately related and the administration of claims requires resolution of the numerous obligations among and between the Scheme Companies.  For this reason, the run-off of the Scheme Companies has thus far been administered on a unified basis, and creditors simply

---

10  In *Travelers Indemnity Co. v. Bailey*, the Supreme Court reversed *Manville's* holding that "the terms of the injunction bar the actions and that the finality of the [b]ankruptcy [c]ourt's orders following the conclusion of direct review generally stands in the way of challenging the enforceability of the injunction." *Travelers Indemnity Co. v. Bailey*, 129 S.Ct. 2195, 2198 (2009).  The Supreme Court chose not to resolve the issue of whether bankruptcy courts generally had jurisdiction to grant nondebtor releases, but emphasized the need to provide certainty and finality to parties in a bankruptcy proceeding by affirming that "the willingness of the Court of Appeals to entertain this sort of collateral attack cannot be squared with *res judicata* and the practical necessity served by that rule." *Id.* at 2206.

submit claims to the Pools for internal determination. The disruption to the unified administration of the Pools that would result from creditors being free to act would entail greater expense for all Scheme Companies, due to the need to evaluate the fronting and reinsurance implications of any piecemeal depletion of the estate of any Scheme Company. Due to the interwoven nature of the Pools Business, a claim against an individual Scheme Company is effectively a claim against all of the Scheme Companies. Binding Scheme Creditors of the Petitioning Companies to the terms of the sanctioned and effective Schemes of the other Scheme Companies will ensure the continued unified run-off of the Pool Business, avoid the costs and harms that would result from the fragmentation of the Pools, and is therefore appropriate under the circumstances.

Further, even where relief would not necessarily be available in a plenary case, bankruptcy courts overseeing chapter 15 cases will enforce relief issued in foreign proceedings so long as the procedures followed by the foreign courts comport with fundamental standards of fairness in the United States. *In re Metcalfe & Mansfield Alternative Invs.*, 421 B.R. 685 (Bankr. S.D.N.Y. 2010); *In re Qimonda AG Bankr. Litig.*, 2010 U.S. Dist. LEXIS 66926 (E.D. Va. July 2, 2010). The primary limitation on this is section 1506 of the Bankruptcy Code, which provides that nothing in chapter 15 prevents a court from refusing to take an action "manifestly contrary to the public policy of the United States." Courts have generally understood "public policy" to refer to "fundamental policies of the United States." *In re Gold & Honey, Ltd.*, 410 B.R. 357, 373 (Bankr. E.D.N.Y. 2009). In deciding whether to apply section 1506, courts examine (i) whether the foreign proceeding was procedurally unfair and (ii) whether the application of foreign law would "'severely impinge the value and import' of a U.S. statutory or constitutional right, such that granting comity would 'severely hinder United States bankruptcy courts' abilities to carry out

. . . the most fundamental policies and purposes' of these rights." *Qimonda*, 2010 U.S. Dist. LEXIS 66926 at *55 (citing *Gold & Honey, Ltd.*).

Here, it cannot be said that the relief requested so offends a public policy of the United States. Pursuant to the Convening Orders, all Scheme Creditors of record were given advance notice of the Schemes and given the opportunity to vote on whether to approve the Schemes. Ultimately, the Schemes were approved by votes in excess of the statutory minimum requirements of a majority in number and 75% in value of each class of creditors present and voting. All Scheme Creditors were thus given ample notice and the opportunity to be heard prior to the effectiveness of the Schemes.

Without the relief requested, the Petitioning Companies' Schemes cannot be administered in a unified, fair and efficient manner that would protect the interests of all of the Petitioning Companies' stakeholders, nor would the value of the Petitioning Companies' assets be maximized. In the absence of the relief requested, United States Scheme Creditors of the Petitioning Companies could obtain judgments without regard to the Schemes, leading to the unequal treatment of certain creditors and the disruption of the unified winding down of the Pools Business. Such an outcome would be contrary to the Schemes as well as to the fundamental purpose of the Bankruptcy Code. *See Cunard Steamship Co. Ltd. v. Salen Reefer Services A.B.*, 773 F.2d 452, 459 (2d Cir. 1985) (explaining that the "guiding premise of the Bankruptcy Code, like its predecessor, the Bankruptcy Act, is the equality of distribution of assets among creditors."). Moreover, such relief is necessary to effectuate the purpose of chapter 15. Accordingly, section 1521 of the Bankruptcy Code expressly authorizes the Court to grant the requested relief.

# VI

## THE PETITIONER HAS ALSO ESTABLISHED
## ITS ENTITLEMENT TO INJUNCTIVE RELIEF

In order to obtain injunctive relief under section 1521 of the Bankruptcy Code, a foreign representative must satisfy the traditional standard for an injunction.  11 U.S.C. § 1521(e).  That standard requires that a court consider whether (i) the plaintiffs are successful on the merits of their claim, (ii) there is no available remedy at law and (iii) the balance of equities favors granting such relief.  *Travellers Int'l AG v. Trans World Airlines, Inc.*, 722 F. Supp. 1087, 1096 (S.D.N.Y. 1989), *aff'd*, 41 F.3d 1570 (2d Cir. 1994); *New York State Nat'l Org. for Women v. Terry*, 704 F. Supp. 1247, 1262 (S.D.N.Y. 1989), *aff'd as modified*, 886 F.2d 1339 (2d Cir. 1989), *cert. denied*, 495 U.S. 947 (1990).

**A.**     **The Petitioner Has Demonstrated its Success on the Merits**

As described herein, the Petitioner has demonstrated the likelihood of its success as to the merits of the Petitions.  First, the Petitioning Companies are subject to foreign proceedings.  Second, the Petitioner is the foreign representative of the Petitioning Companies and their foreign proceedings.  Third, the requested relief will permit the orderly resolution of Scheme Claims in the proceeding brought under foreign law consistent with chapter 15 of the Bankruptcy Code.  Finally, the Petitions satisfy all of the requirements set forth in section 1515 of the Bankruptcy Code.

**B.      No Available Remedy at Law**

Irreparable harm is one basis for establishing the inadequacy of any legal remedy. *Travellers*, 722 F. Supp. at 1096.  It has been consistently held that "the premature piecing out of property involved in a foreign liquidation proceeding constitutes irreparable injury." *In re Lines*, 81 B.R. 267, 270 (Bankr. S.D.N.Y. 1988).  It has also been held that irreparable harm to an estate exists where the orderly determination of claims and the fair distribution of assets are disrupted. *Victrix S.S. Co. S.A. v. Salem Day Cargo A.B.*, 825 F.2d 709, 713-14 (2d Cir. 1987).  Finally, irreparable harm has been found where allowing litigation to go forward would (i) threaten the assets of a foreign estate, (ii) subject a foreign representative to a default judgment, and (iii) divert funds needed for the purpose of maximizing value for the estate's creditors.  *In re Gercke*, 122 B.R. 621, 626 (Bankr. D.C. 1991).

The risk of irreparable harm is present here.  If Scheme Creditors of the Petitioning Companies in the United States are not enjoined, assets of the Petitioning Companies may be prematurely pieced out and the orderly determination of Scheme Claims and the fair distribution of assets in the foreign proceeding will be severely disrupted.  In this instance, injunctive relief is necessary "to prevent individual American creditors from arrogating to themselves property belonging to the creditors as a group."  *See In re Banco Nacional de Obras y Servicios Publicos, S.N.C.*, 91 B.R. 661, 664 (Bankr. S.D.N.Y. 1988).

Absent the relief requested, including the permanent injunction, the Petitioning Companies may be forced to expend finite resources of the estate in defense of improper attachment and other similar actions by Scheme Creditors in contravention of the Petitioning Companies' Schemes.  Alternatively, the Petitioning Companies could forego their defenses altogether, resulting in default judgments and affording unfair advantage to some Scheme

Creditors to the detriment of others. Thus, without the granting of the relief requested, the Petitioning Companies' estates and their Scheme Creditors will suffer irreparable harm.

On the other hand, granting the relief requested would ensure that the run-off of the Pools is centralized in a single forum in furtherance of the interests of creditors. *See Fidelity Mortg. Investors v. Camelia Builders, Inc.*, 550 F.2d 47, 55 (2d Cir. 1976), *cert. denied*, 429 U.S. 1093, *reh'g denied*, 430 U.S. 976 (1977). "Indeed, the foreign court which presides over the original proceeding is in the best position to assess where and when claims should be liquidated so as to conserve estate resources and maximize the assets available for distribution." *In re Bird*, 222 B.R. 229, 233 (Bankr. S.D.N.Y. 1998) (citing *Gercke*, 122 B.R. 621); *see also Armco Inc. v. North Atlantic Ins. Co. (In re Bird)*, 229 B.R. 90, 96 (Bankr. S.D.N.Y. 1999) (counterclaims asserted against debtor in adversary proceeding prohibited by preliminary injunction and should be determined in the foreign proceeding); *In re Davis*, 191 B.R. 577, 585 (Bankr. S.D.N.Y. 1996); *In re Rubin*, 160 B.R. at 269, 279-80 (Bankr. S.D.N.Y. 1983). If the relief requested is granted, the run-off of the Pools would remain unified in the interests of the Scheme Creditors and the Petitioning Companies.

## C.      The Balance Of The Equities Tips Decidedly In Favor Of The Petitioner

In contrast to the hardships described above, issuing a permanent injunction which, among other things, enforced the Schemes in the United States, will cause minimal hardship to United States Scheme Creditors. Indeed, all of the Petitioning Companies' Scheme Creditors will benefit from the Petitioner's efforts to preserve and maximize the value of the Petitioning Companies' estates and achieve the unified run-off of the Pools and the global resolution of Scheme Claims. Without injunctive relief, there can be no equitable and orderly distribution of

the Petitioning Companies' estates pursuant to a single, comprehensive plan. Thus, the balance of the equities tips decidedly in favor of the Petitioner.

## **CONCLUSION**

For the foregoing reasons, the Petitioner respectfully requests that this Court grant the relief requested.

Dated: New York, New York

      October 14, 2010

ALLEN & OVERY LLP

Ken Coleman
Stephen Doody
1221 Avenue of the Americas
New York, New York 10020
Telephone (212) 610-6300
Facsimile (212) 610-6399
ken.coleman@allenovery.com
stephen.doody@allenovery.com
